The next case this morning is 523-0707, People v. Gibbs. Arguing for the appellant is Kimberly Janssen. Arguing for the athlete is Lynn Harrington. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning, your honors. Good morning. Say my good morning again now that we're recording. Apologize for the slight delay. We had some technical difficulties this morning, and then we had a lot of questions in the last case. So I also need to advise you that Justice Welch is unable to be with us this morning. However, he will be listening to the arguments, recorded arguments at a later time, and we will discuss the case with him separately after today. Ms. Janssen, are you ready to proceed? I am. Thank you, your honor. I do so. May it please the court. My name is Kim Janssen, and I'm here today on behalf of the appellant, Devin Gibbs. Casey's recorded video statement in this case is a crucial part of all three of the issues that we raised. So in the interest of trying to keep continuity here, I would like to focus primarily on the issue of admissibility under section 115-10. If time permits, I will address the ineffectiveness and reasonable doubt claims as well. A hearsay statement such as Casey's is admissible under 115-10 only if the court finds at a separate hearing that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. Importantly, the sufficient safeguards of reliability is not a credibility finding, but rather a determination that the inherent trustworthiness of the statement makes it particularly worthy of belief. It's the state's burden to demonstrate that the statement is particularly worthy of belief and not the product of adult prompting or manipulation. Here, the court did not conduct a hearing, um, but instead simply addressed it in the course of trial. If the proper analysis had been held, the statement should have been inadmissible. Now, you're suggesting that the judge who, this was a bench trial, correct? This was correct. This was a bench trial. So the judge, had he heard this argument prior to hearing the argument in the course of trial would have ruled differently than he did? There's at the very least a reasonable probability that he would have. And in fact, the statute specifically requires that a hearing must be held. It doesn't require simply that the court consider reliability, but it specifically specifies that a hearing is to be held at which this issue is considered. Again, because it's not the same thing as a credibility determination, the importance of doing it in a separate hearing helps to keep those two inquiries separate. The court first has to determine if it's inherently trustworthy and if it has particular, uh, it's particularly worthy of belief based on indicia of trustworthiness. But those are primarily dealing with those cases that interpret that are primarily dealing with jury trials and how you have to have a separate hearing outside the presence of the jury for court to make those determinations. As Justice Barberis pointed out, in a bench trial, it's the same judge hearing the same evidence. I'm not sure how you say there's a reasonable probability. There might be a reasonable possibility, but I'm not sure there's a reasonable probability that it would have been different. We don't know whether it would have been different, which is why the hearing needed to have been held. Um, yeah, at a separate hearing, both sides would have the opportunity to present evidence and argument. Um, at a hearing addressing the reliability of the statement, you're going to ask different types of questions regarding the admissibility of the statement than you would at trial when you're trying to address the credibility of the statement if it comes in. We didn't have that initial hearing, so we don't know how that would have come out. And that's, for that reason, it's an error to not hold the hearing. Did the trial attorney acquiesce to that, or was there an objection? How did that take place? How did that happen that there was no hearing? So, initially, the state brought a pre-trial motion for admission of this statement, to which counsel did, in fact, acquiesce, which is part of our ineffectiveness argument. But then, before trial began, counsel recognized that failing to object makes him a strickling candidate, and therefore he requested that this hearing be held. And the court said he didn't want to take the time before trial to do that, so they just proceeded with the statement. And the trial judge indicated that if, after hearing the statement, he agreed with defense counsel's argument, then he could strike the statement. But that's not how a reliability determination under 11510 is supposed to occur. Well, is it not true, though, that the trial court actually said that when Mr. Gibbs' attorney said the strickling comment, that that's already been ruled on, we're going to proceed, we're not going to delay the trial at this time, and we'll take it up as needed? Yeah, that is exactly what happened. So, he wasn't blowing it off, he was suggesting that you had your opportunity, you said it was okay to let this in, we'll address it later since we have everybody here for the trial. Right. So, one, it's a bench trial, so doing the hearing before the trial wouldn't have, it's not like you'd have a jury sitting around waiting. No, you did have witnesses, right? Yes, of course, of course. Okay. No, I understand what you're saying, and I agree with you on that. I just wanted to point out there, or make sure that I was correct, it wasn't a separate day when witnesses weren't already in the courthouse? No, that's correct. Okay, thank you. So, once trial counsel did basically revoke his acquiescence, and I understand the trial court's frustration, if I were in that position, I'd be a little irritated as well, if I were the trial judge, but because the statute does specify that the hearing should be held, and it is the state's burden of demonstrating reliability under the statute, once counsel said, you know what, I do object, the court should have gone ahead and held the hearing, because counsel's correct. If the statement was admissible solely based on that pretrial acquiescence, that's, as the third district put it in T.L. Smith, that's the clearest case of clear incompetence to simply acquiesce to the admission of such a statement. The details of the statement as introduced at trial also show that, even considering it in the course of trial, the judge was wrong to admit the statement, because it does not have indicia of reliability particularly worthy of belief. The first factor the courts consider in addressing that question is the spontaneity and consistent repetition of the statement. Well, there is no consistent repetition of the statement. There's no repetition at all. The statements made at the recorded interview were made largely for the first time. Now, we know there was a conversation of some sort with her mother beforehand, where her mother asks, did he touch you? She says no. Her mother keeps asking. She says, okay, yeah, fine, he did it. We don't have the details of that conversation, so we have no way of knowing whether or not there was manipulation in that conversation. And then when she gets to the interview, and she's prompted to ask to talk about these stories, she tells three distinct scenarios, and each one of them varies in the course of her telling it. The first scenario is the first time something happened. She says this is the last day of school when she had just come back to live with her mother. First, she says only her Meemaw was at home, and she was asleep on the couch. Later in the statement, she says, no, no, only A.C. was home, her little sister. She was the only one home when this happened. She says that this incident involved digging in her no-no square, but then when she's asked to explain what digging in your no-no square means, she said she didn't know. She didn't know. She says she was sitting on the bed when this happened with Gibbs lying behind her, and she's playing the game Fortnite, and then somehow she says that she kicked him in the nuts, which, as the court knows at trial, she denied she ever kicked him in the nuts and didn't even know what the word nuts meant. The second incident is this kitchen counter incident. Again, at trial, she denied anything ever happened on the kitchen counter, and again, this story changes as she's telling it as well. At first, she tells a story where at some point he's kissing her, and so she bit his lip, and he says, oh, we're finished, which she took to mean we're going to go back and play Fortnite again. When the interviewer, Wendy Zobrist, asks, well, did you go back and play Fortnite, or did something else happen? She, again, says we went back and played Fortnite. Then the interviewer keeps trying, and she says, well, you were, correct me if I'm wrong, Casey, but weren't you going to tell me a story about a time when he put his wee-wee inside you? And at that point, she starts to tell a story about that, which ends with her sliding off the kitchen counter without him noticing. Inherently unreliable. The statement changes. It's full of improbabilities. I see my time's up. May I continue? Go ahead and finish your thought, please. So, none of the three scenarios that she related were consistent, even in the course of the forensic interview. There's no spot-made inconsistent repetition. She's using terms that she's unfamiliar with. She has a motive to fabricate. And all these inconsistencies not only rendered that statement inadmissible at trial, but since that was the the court's finding of guilt, it defeats reasonable doubt. There was a reasonable doubt, and he should have been acquitted. And, of course, counsel's conduct was ineffective. If this court has no further questions, I would simply ask that you reverse. Justice Barberos? None at this time. Let me ask you this. You mentioned a couple times that the statute specifically requires a separate hearing, but I'm looking at the statute. What the statute actually says is, such testimony shall only be admitted if, one, the court finds in a hearing conducted outside the presence of the jury. And there wasn't a jury, so how separate the hearing has to be seems to me a little bit open for interpretation. You have to have a separate determination. I understand that, but the court can make that on the fly if there's no jury, it seems to me. Well, the statute does specify a hearing, and a hearing is, by definition, a separate part of a proceeding. It's not combined with a trial. A hearing and a trial are separate. And, in fact, counsel herself cited a case law, the Arika M case, acknowledging that this statute applies to bench trials just as it does to jury trials. It's not limited to jury trials, and if the legislature had wanted to impose that requirement only in the case of jury trials, it could have said, oh, in a jury trial, a hearing must be held. But it didn't. It just said a hearing outside the presence of the jury. And, of course, any hearing in a bench trial is going to be outside the presence of a jury, but the hearing has to be there. Thank you. Any other questions based on my question, Justice Barberos? Not right now. Thank you. Thank you. Thank you. All right. You have an opportunity for rebuttal in a moment. Ms. Harrington, are you ready to proceed? Good morning, Your Honors. Counsel, may it please the court, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honors, with regard to the issue of whether the trial court abused its discretion in admitting the Amy Center interview, before I get to the law, I'd like to touch on a comment that counsel made in page 18 of her reply. She says, the state contends that because this was a bench trial, the hearing mandated under 11510 was not required. And for that proposition, she cites to my brief at page 44. However, Your Honor, the people never made such a contention and do not make this contention not appeal. Instead, what the people said at page 44 was that defendant cites no case law, the hearing must be held separately from the actual trial, which I appreciate Justice Vaughn just pointed out that the statute does not require a separate hearing. It just requires a hearing outside of the presence of the jury. And because here we didn't have any jury, it would be absolutely appropriate, as the trial court did, to have the hearing within the confines of the hour before or during the bench trial is not going to change the outcome with regard to whether the videotape meets the statutory requirements of 11510. And the record is clear here that the trial judge did hold a hearing in the bench trial. In fact, it specifically said at the beginning of the trial, on page 201, it said we have to find whether there were sufficient safeguards of referring to the video and that the child testifies at trial and that at the end of trial and the record page 406, the trial court specifically said that it admitted the video into evidence because it felt it met the requirements of the statute to come in. So we know that the trial court was aware of the statute, was aware of the requirements, held a hearing by listening to the video and making its proper determination. And this standard overview for this issue, as your honors knows, abuse of discretion, which is incredibly high. This court would have to find that that decision was arbitrary, capricious. No other reasonable jurist would have made that decision. And that certainly does not stand with this record. This record shows that the trial court made an appropriate determination here. Let me ask you this with regard to the court's acknowledgement and obvious awareness of the need to look at this record with a close evaluation of its reliability. Would it be different? It would obviously be different if there was no mention of it anywhere in this transcript. The had the judge not at least discussed the need for the, you know, the reliability test. We might have a different concern at this point, correct? Perhaps your honor that as you correctly noted, that is absolutely not the case because this trial court made a very good record. However, other cases have held that if there's enough information on the record, even if the trial court didn't use the exact words, the statute requires, it can be considered a harmless error. If you look at the whole record and realize that the trial court did what it was supposed to do under 11510. But here we've got a really good record. So we've got Wendy Zobrist testified. She had done over 400 forensic interviews. She testified that she majority of the time, she only asked open-ended questions. A couple of times she had to ask closed if the child wouldn't answer one way or another, but she never, ever asked leading questions. With regard to spontaneous in her brief, defendant uses the word spontaneous in a context that is not related to 11510 hearings. In fact, she cites, do I believe three cases, none of them are 11510. And really they all have to do with excited utterances. One of them is actually a 77-year-old case from 1948. And it was before the rule of evidence 803 on excited utterances. It talks about the rest just shy. Again, has absolutely nothing to do with whether these comments made by the eight-year-old victim in the Amy Center interview were spontaneous. They were spontaneous in the fact that Zobrist asked her open-ended questions. Did anything happen that day? And the child provided specific details about the events which occurred over an entire year where the defendant repeatedly sexually assaulted her. Also with regard to repeating, counsel says that these comments were never repeated and that the it does reflect that the mother asked did defendant touch you or something to that effect and mom respond, I'm sorry, victim responded and said, he touched my no-no square and in my front. So they are repeated from the mom to Zobrist and they are spontaneous. And for those reasons, your honor, there was no, no abuse of discretion whatsoever in allowing this. And again, defendant doesn't have any case law to back this theory up that there needs to be a separate hearing. In fact, so let me, let me stop you for a moment and Justice Fong can come back and ask you to expound on where you're going with this argument. But one of the troubling aspects of the reliability of this witnesses are those victims testimony in my mind. And I just can't get around it is the fact that she had claimed several times to several people that many of the acts involved penetration. It involved, I believe she alleged that she had been sexually assaulted orally, anally and vaginally. The medical records don't seem to bear that out in terms of the exam that was conducted, didn't find any type of trauma and intact time and so forth and so on. Couple that with what I originally thought was somewhat ridiculous defense strategy. But the testimony of the ex-girlfriend or wife and this victim's mother, in terms of sexual relations that they had with this defendant, how does that square up? How does, how do I'm not sure how we get, you know, a clear understanding of what if there was, in fact, no medical evidence of penetration on an eight-year-old girl. How do we get by that? Thank you, Your Honor, for the question, because I did want to reach that topic specifically that the statute of criminal predatory criminal sexual assault says that it's contact however slight. I understand that and I think Justice Vaughn understands that. I'm sure Justice Welch with all the years on the bench hearing these cases understands that as well. However, the victim didn't testify that he rubbed on her. She was fairly specific in a couple instances that he was penetrating her. So how do we get around that? First of all, Your Honor, with all due respect, I don't think an eight-year-old who hasn't been had sexual intercourse before would really know what full penetration of a hymen is. I don't disagree with you 100 percent. Thank you for pointing that out. I agree with you on that. Right. But in so much as we're talking about consistency and statements. Right. And, you know, her terminology having changed from when she was eight years old to 10 years old. I mean, 10 years old still shouldn't have any idea what she's talking about. Correct. It seems like she did talk about penetration as we would understand it as opposed to external, you know, touch. Right. But the law says, Your Honor, even if the penis goes inside the vaginal canal, they consider the vagina, even if it goes inside the labia, it's penetration, however slight. And in the Amy Center video, with regard to your discussing count for the penis, his penis, her vagina, the child said he always used to put his wee wee inside of me in her front and back. Then she circled the penis, the buttocks, the female genitals on the anatomy sheet at trial. She said he would push up and down. She described what his penis looked like. And she used a crass term for penis that said he put his penis in her vagina more than four times. That that's that's a credibility issue. Your Honor, the trial court was the one to weigh the evidence. Look at this child testifying on the videotape. And later, we're talking about the unreasonable doubt issue at trial. Look at the defendant when he got on the stand and said, I don't know what you're talking about. I, you know, I masturbate and put semen, all different things all over the house. Okay, who's telling the truth here? Is this child telling the truth? Or is that guy telling the truth? That's the trial judge's job. And again, with the standard being so high with regard to the miscibility that we're talking about, they certain there was no abuse of discretion there. And in viewing the evidence in the light most favorable to the state, for purposes of beyond a reasonable doubt that the people definitely demonstrated beyond a reasonable doubt that the defendant committed criminal predatory sexual assault of counts three through six of the amended indictment. I see that my time is up. Would you like me to continue or wrap up? Any other questions, Justice Barberos? Oh, I have thousands of questions, but we don't have time to get to all of them. So thank you very much. Your Honor. Thank you. Ms. Jansen, rebuttal. First, I just want to correct a misstatement counsel made. She indicated that this had been going on over the course of an entire year. That's not what the evidence suggests. Casey said at her Amy Center interview that the first incident occurred on the last day of school of her, you know, second grade school year. And her Amy Center interview was on the first day of school for the third grade school year. So somewhere between June and August is the amount of time that she's living together with her mom and Mr. Gibbs and alleging that some sort of conduct has occurred. Notably, counsel indicates that there is no abuse of discretion in the admission of this Amy Center interview tape, but she doesn't address any of the factors that the courts have directed should be considered. There's, you know, other than suggesting that her general touching her front. She doesn't indicate that any of these actual scenarios, the full elaborate stories that Casey tells at that interview, they've never been repeated to anyone anywhere. And in fact, at trial, her accounts are entirely different. Yeah, she says at trial that none of this conduct on the kitchen counter ever occurred. She says that at trial that he only put his penis in her mouth one time, and that occurred in the kitchen. She said in the Amy Center interview that it happened in this last time incident in the upstairs bedroom. It can't happen in two places if it only happened one time, as she said. And then these vague statements about, you know, he did this to me all the time. He always did this. That's not identifying any specific conduct, just a vague generalization that he always did this. How do you defend against that? How do you identify a scenario in which that happens? And again, this is not a scenario where she's described a specific incident happening over and over again, and simply not remembering distinguishing details. It's the distinguishing details that she recounts at her interview are different than the very willing to repeat at trial. The counsel says that the record is clear that the court did what he was supposed to do in evaluating the admissibility of the evidence. But when he declined to hold the separate hearing, which again, I believe is required, he also indicated that he was going to hear the statement. And if he agreed with defense counsel's objection, then he would strike it. But the law is clear on this, that the burden is not defendants to show its inadmissibility. The burden is on the state to show that this is a statement particularly worthy of belief. Without regard to corroborating evidence, without regard to other factors, it must be inherently trustworthy. And given all these inconsistencies, it was not. If the court has no further questions. This is barbarous. Not at this time. Thank you. Thank you very much. Thank you. We'll appreciate your arguments. We'll take the matter under advisement and issue a decision in due course. Thank you.